UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSE L. MAURER,

    Plaintiff,

v.                                     Case No. 1:12-cv-647

                                       Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on March 20, 1983 (AR 202).[1] He alleged a disability onset date of September 28, 2009 (AR 202). Plaintiff completed two years of college and had previous employment as the director of new business at an insurance agency, a child day care provider, a restaurant host/waiter, and a quality control inspector at a plastic injection molding plant (AR 206). Plaintiff identified his disabling conditions as: recurring major depressive disorder; general anxiety disorder; osteo-arthritis in entire spine and both knees; bone spurs in spine and both knees; ruptured discs; "military neck"; scoliosis; high blood pressure; anxiety; and a ruptured disc (AR 205). On January 13, 2012, an Administrative Law Judge (ALJ), reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 13-21). This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 28, 2009 and met the insured status requirements of the Act through September 30, 2013 (AR 15). At step two, the ALJ found that plaintiff had the following severe impairments: history of discectomy of the lumbar spine; left shoulder arthroscopy - 2011; depression; anxiety; obesity; and hypertension (AR 15). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.06 (anxiety related disorders) (AR 17-18).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> . . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: to lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can walk or stand for six hours and sit for six hours. He can do no overhead work. The claimant can only do simple unskilled work with a specific vocational preparation (SVP) rating of 1 or 2. He can have no contact with public and can have only limited contact with coworkers.

(AR18). The ALJ further found that plaintiff was unable to perform any past relevant work (AR 20).

4

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 20-21). Specifically, plaintiff could perform the following jobs in the regional economy (the Lower Peninsula of Michigan): collator operator (5,000 jobs); sorter/folder (3,000 jobs); and electronics assembler (5,000 jobs) (AR 20-21). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 28, 2009 (the alleged onset date) through January 13, 2012 (the date of the decision) (AR 21).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.[2]

**A.  Claimant met or equaled Listings 12.04 and/or 12.06 because he did have marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence and pace.**

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§

---

[2] The Court notes that plaintiff's initial brief did not "contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand" as required by the Court's notice and order directing filing of briefs. *See* Notice (docket no. 11). The Court will construe plaintiff's argument headings which appear in his brief as the errors asserted.

404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education or work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

The ALJ found that plaintiff did not meet or equal either Listing 12.04 (affective disorders) or 12.06 (anxiety related disorders), explaining in pertinent part:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction. In September 2010, the claimant reported he took his father to doctors' appointments, cleaned, did laundry, went shopping and was able to handle his financial affairs (Exhibit 3E). In February 2011, the claimant reported he did his laundry and housekeeping. He stated he was able to drive (Exhibit 12F). The claimant reported to Dr. Lazzara he was able to do his household chores, drive and cook (Exhibit 11F).
>
> In social functioning, the claimant has moderate difficulties. In February 2011, Dr. Geiger noted the claimant was cooperative, verbal and engaged in the assessment process (Exhibit 12F). The claimant reported to Dr. Lazzara that he

enjoyed going out and being social (Exhibit 11F). The claimant testified he sees his mother daily and has individual therapy every two weeks.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. In September 2010, the claimant stated he read, played video games, watched television and drove (Exhibit 3E). In February 2011, the claimant stated he watched television, listened to music, read science fiction books and used the computer. Dr. Geiger reported the claimant recalled eight digits forward, six digits backward and three of three objects after a three-minute delay. Dr. Geiger stated the claimant was able to perform serial sevens and simple math calculations (Exhibit 12F).

As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. The claimant had two psychiatric hospitalizations in 2009.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.[3]

(AR 17-18).

---

[3] To meet the "C" criteria for Listing 12.04, plaintiff must demonstrate the following:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*See* Listing 12.04. To meet the "C" criteria for Listing 12.06, plaintiff must demonstrate that he has a severe condition "[r]esulting in complete inability to function independently outside the area of one's home." *See* Listing 12.06.

The ALJ's determinations that plaintiff failed to meet or equal Listings 12.04 or 12.06 are supported by substantial evidence as reflected in Exhibit 3E (adult function report, AR 216-23), Exhibit 11F (consultative examination by R. Scott Lazzara, M.D., AR 469-73), and Exhibit 12F (psychiatric/psychological medical report by Steve Geiger, Ph.D., AR 475-79). While plaintiff contends that he "met or equaled the Listing 12.04 and/or 12.06," he does not discuss the elements of either listing or explain how he met or equaled the listings. Rather, plaintiff shortcuts the analysis by presenting a brief narrative describing his mental condition and setting forth the conclusory statement that "[f]airly assessed, the medical records and the testimony show a Listing was met." Plaintiff's Brief at p. 10. Plaintiff has failed to show that the ALJ's determinations with respect to Listings 12.04 and 12.06 were in error. Accordingly, plaintiff's claim of error should be denied.

> **B. The ALJ had no rational basis to challenge claimant's credibility, and if claimant's description of his symptoms and activities of daily living are true, there was no work at any exertional level he could perform.**
>
> **1. Credibility**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed

the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff contends that the ALJ "gave no valid reason to doubt the veracity of claimant's symptoms." Plaintiff's Brief at p. 12. The Court disagrees. The ALJ evaluated plaintiff's credibility in detail, providing in part as follows:

> The claimant testified he has left shoulder, knee and back pain, anxiety, and suicidal thoughts daily. He stated he leaves the house once per week. The claimant testified side effects from his medication include fatigue, dizziness and memory problems. He stated it has been six months since he visited his friends. The claimant testified Robin Bell, a therapist, treats him. He stated he can stand for up to 10 minutes, walk for 2 blocks and lift 10 pounds. The claimant testified his mother does the household chores. He stated he reads and listens to music. The claimant testified he has concentration and focus problems.
>
> Robin Bell, the claimant's therapist, testified she treated the claimant for 12 months and then started seeing him again two months ago. She stated she sees the claimant an hour every two weeks. Ms. Bell testified the claimant has history of sexual abuse, posttraumatic stress disorder, flashbacks, sleeping difficulties, nightmares, pain issues and history of suicide attempts.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant testified his mom does all the household chores but in February 2011 stated he was able to do his household chores, drive, cook and [do] activities of daily living. The claimant testified he has memory, concentration and focus

9

problems but Dr. Lazzara noted the claimant's immediate, recent and remote memory was intact with normal concentration. The claimant testified he can walk one block but reported to Dr. Lazzara he could walk for one mile (Exhibit 11F).

* * *

As for the opinion evidence, in February 2011 Dr. Geiger opined the claimant could understand and follow instructions, and perform simple routine tasks. He further averred the claimant could not effectively communicate with coworkers, customers or supervisors (Exhibit 12F). This opinion is explained by Dr. Geiger's report and consistent with the record as a whole. Therefore, the undersigned gives this opinion great weight and includes it in the claimant's residual functional capacity.

The medical records establish the claimant has history of discectomy of the lumbar spine; left shoulder arthroscopy - 2011; depression; anxiety; obesity; and hypertension. However, in September 2010 the claimant reported he performed a wide range of activities of daily living (Exhibit 3E). In February 2011, Dr. Lazzara noted the claimant had no difficulty getting on and off the examination table, heel and toe walking, squatting and hopping. Dr. Lazzara stated the claimant's straight leg raising was negative and he had a normal neurologic exam. Dr. Lazzara averred the claimant's "degree of impairment physically appears mild" (Exhibit 11F). Dr. Heilman stated the claimant had normal musculoskeletal, neurologic and psychiatric exams (Exhibit 10F). The claimant has had no psychiatric hospitalizations since he has been compliant with his medication. He does not need a structured living arrangement and has no psychotic symptoms.

The claimant has not been fully compliant with his medical treatment. On December 31, 2009, the claimant reported he had not been taking his psychiatric medications as prescribed on a regular basis and his depression became worse (Exhibit 5F).

(AR 19-20).

There is no compelling reason to disturb the ALJ's credibility determination in this case. The ALJ has found contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. The ALJ's credibility determination is reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. In addition, the ALJ accommodated plaintiff's mental and physical problems in the RFC by including: exertional limitations (light work

and less than six hours each of standing, walking and sitting throughout the workday); postural limitations (no overhead work); and mental limitations (only simple unskilled work, no contact with the public and only limited contact with coworkers) (AR 18).

### 2. Global Assessment of Functioning (GAF) Score and Ms. Bell's testimony

In the portion of his brief addressing credibility, plaintiff raises two cryptic arguments not directly related to the credibility issue.

#### a. GAF score

First, plaintiff contends that the GAF scores for plaintiff (with the sole exception of Dr. Geiger) "were well below the 50 level" and that "[a]ny GAF rating at or below 50 is generally considered to describe a person whose emotional condition is severe enough that full time employment is not possible." Plaintiff's Brief at p. 12. The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.* A GAF score below 50, e.g., a score lying within the 41 to 50 range, indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

11

shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

While plaintiff relies on the GAF score as evidence of disability, the Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Social Security*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). A GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006). In addition, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. In short, there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Secretary of*

*Health & Human Services*, 823 F.2d 922, 927 (6th Cir.1987) (citation omitted). Thus, to the extent that plaintiff asserts that his GAF scores under 50 establish a disability, this claim should be denied.[4]

### b. Ms. Bell's Testimony

Second, plaintiff speculates that "[i]f the Court" [presumably the ALJ] did not consider Ms. Bell to be a valid medical source because she only has a credential as a Licensed Master Social Worker, he did not mention it in his opinion." Plaintiff's Brief at p. 12. The Court finds no error here. As a social worker, Ms. Bell's opinion regarding plaintiff's mental condition was not the opinion of an acceptable medical source subject to controlling weight, *see* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), but rather the opinion from a medical source other than an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) (the Commissioner may use evidence from other medical sources such as nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists to show the severity of a claimant's impairment and how it affects the claimant's ability to do work). In Social Security Ruling (SSR) 06-3p, the Commissioner acknowledged that with the growth of managed health care in recent years,

---

[4] Plaintiff states that "Any GAF rating at or below 50 is generally considered to describe a person whose emotional condition is severe enough that full time employment is not possible. The 6th Circuit has recognized this: *Smith v. Commissioner of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)." Plaintiff's Brief at p. 12. Plaintiff's statement regarding the Sixth Circuit characterization of a GAF score of 50 is inaccurate. Contrary to plaintiff's representation, Sixth Circuit's decision in *Smith* did not find the GAF score to be determinative, but *did* find that a person with GAF scores in the high 40s to mid 50s had the mental capacity to perform some jobs, stating:

> Furthermore, the record contains substantial evidence that Smith has sufficient mental function to perform the mild work the ALJ found she could do. Smith complains that the mental RFC determination must be defective because she has been rated 45–50 on the Global Assessment of Functioning (GAF) scale. Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude her from having the mental capacity to hold at least some jobs in the national economy. . .

*Smith*, 482 F.3d at 877.

physicians' assistants and nurse practitioners have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. For this reason, opinions from other medical sources, such as physicians' assistants and nurse practitioners "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p.[5] Here, the record reflects that the ALJ did consider Ms. Bell's opinion in resolving plaintiff's claim, and therefore plaintiff's claim of error should be denied.

      **C.    The combined effect of the mental illness and the physical symptoms of everyday pain from the shoulder and low back pathology, make claimant unable to perform competitively in the work force.**

The ALJ found that with his RFC, plaintiff could perform work as a collator operator, sorter/folder or electronics assembler (AR 20-21). Plaintiff contends that the severe impairments found by the ALJ (i.e., history of discectomy of the lumbar spine; left shoulder arthroscopy - 2011; depression; anxiety; obesity; and hypertension (AR 15)) show that he is not the "typical" collator operator, sorter/folder or electronics assembler. Specifically, plaintiff claims that each disorder identified by the ALJ "is severe enough to likely make [plaintiff] absent or tardy more than the maximum two days per month noted by vocational experts as the limit for employability." Plaintiff's Brief at p. 13. Plaintiff also contends that the "standard" applicable to him "is not whether any particular disorder meets a listing or amounts to disability," but rather "whether the whole person

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky*, 167 Fed. Appx. at 498, quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

is disabled by reason of the combined impairments." *Id.* Finally, plaintiff contends that he could not work according to a schedule or make production due to his stress-related anxiety. *Id.* Based on these arguments, plaintiff apparently contends that the ALJ erred by failing to consider the combined effects of his impairments.

The Social Security Act requires the agency "to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). *See* 20 C.F.R. § 404.1523. The Sixth Circuit has found that an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," or all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." *See Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990).

Here, the record reflects that the ALJ took into account all of plaintiff's impairments in reaching the determination that he could perform a limited range of light work. ALJ stated that the regulations require him to consider whether a claimant has an impairment or combination of impairments which significantly limits his ability to perform basic work activities (AR 14-15). The

15

ALJ determined plaintiff's RFC by considering plaintiff's "impairments" (including impairments that are not severe) (AR 14-15), discussed each of plaintiff's impairments individually (AR 15-20), and stated that he reached his decision "[a]fter careful consideration of the entire record" (AR 15). The explicit language from the ALJ's decision is sufficient to demonstrate that he considered the combined effects of plaintiff's impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592. Accordingly, plaintiff's claim of error should be denied.

## IV. Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: February 10, 2014         /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).